B104 (FORM 104) (08/07)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>*Richard P. Duffee*<br>*Rachel L. Duffee* PRO SE | **DEFENDANTS**<br>*Arthur D. Gold* |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>*220 Ferry Street*<br>*Marshfield MA 02050*<br>*917-929-1121* | **ATTORNEYS** (If Known) |

| **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

*Breach of Contract*
*Professional Malpractice*
*11 USC Sections 523, 727*

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| FRBP 7001(1) – Recovery of Money/Property | FRBP 7001(6) – Dischargeability (continued) |
|---|---|
| ☐ 11-Recovery of money/property - §542 turnover of property | ☐ 61-Dischargeability - §523(a)(5), domestic support |
| ☐ 12-Recovery of money/property - §547 preference | ☒ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☐ 13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability - §523(a)(8), student loan |
| ☐ 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation |
| | (other than domestic support) |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien** | ☐ 65-Dischargeability - other |
| ☐ 21-Validity, priority or extent of lien or other interest in property | |
| | **FRBP 7001(7) – Injunctive Relief** |
| **FRBP 7001(3) – Approval of Sale of Property** | ☐ 71-Injunctive relief – imposition of stay |
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | ☐ 72-Injunctive relief – other |
| | |
| **FRBP 7001(4) – Objection/Revocation of Discharge** | **FRBP 7001(8) Subordination of Claim or Interest** |
| ☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | ☐ 81-Subordination of claim or interest |
| | |
| **FRBP 7001(5) – Revocation of Confirmation** | **FRBP 7001(9) Declaratory Judgment** |
| ☐ 51-Revocation of confirmation | ☒ 91-Declaratory judgment |
| | |
| **FRBP 7001(6) – Dischargeability** | **FRBP 7001(10) Determination of Removed Action** |
| ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | ☐ 01-Determination of removed claim or cause |
| ☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud | **Other** |
| ☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.* |
| | ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |
| **(continued next column)** | |

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ *3,000,000 + interest, penalties, damages.* |

| Other Relief Sought | *SEE NEXT PAGE* |
|---|---|

Adversary Proceeding Cover Sheet                    addendum page 1


Richard P. Duffee and Rachel L. Duffee        plaintiffs

Arthur D. Gold                                defendant        MAR14'08 PM 3:51 USB


Demand:   $3,000,000 plus interest, penalties, damages.


Other Relief Sought:

Relief from stay. Allow movants to proceed with action(s) against debtor and/or

employers/partners of the debtor in the appropriate courts, as movants' issues pertain

primarily to the debtor's conduct and performance as their attorney, fiduciary, and real

estate expert.

One other creditor in this case with breach of contract and malpractice claims has already

obtained such relief from stay.  Movants read in case history yet another creditor with

claims against the debtor AND his employers/partners has recently applied for similar

relief from this court.

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES |||
| NAME OF DEBTOR *ARTHUR O. GOLD* || BANKRUPTCY CASE NO. *05-22609* |
| DISTRICT IN WHICH CASE IS PENDING *MASSACHUSETTS* | DIVISION OFFICE *EASTERN* | NAME OF JUDGE *HILLMAN* |
| RELATED ADVERSARY PROCEEDING (IF ANY) |||
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)  *Richard P. Duffee*  pro se  *Rachel L. Duffee*  pro se |||
| DATE *March 14, 2008* || PRINT NAME OF ATTORNEY (OR PLAINTIFF) *RICHARD P. DUFFEE* *RACHEL L. DUFFEE* |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## (EASTERN DIVISION)

Case No. 05-22609-WCH

| | |
|---|---|
| In Re: | ) |
| | ) |
| ARTHUR D. GOLD | ) |
| | ) |
| | ) |
| Debtor | ) |
| Chapter 7 | ) |
| | ) |
| | ) |
| | ) |
| RICHARD P. DUFFEE AND | ) |
| RACHEL L. DUFFEE | ) |
|     Adversary Plaintiffs, | ) |
|        PRO SE | ) |
| | ) |
| ARTHUR D. GOLD | ) |
|     Adversary Defendant | ) |
| | ) |
| | ) |

Adversary Proceeding Number _____

*MAR 14 '08 PM 3:52 USB*

## ADVERSARY COMPLAINT AND MOTION FOR RELIEF FROM AUTOMATIC STAY

Richard P. Duffee and Rachel L. Duffee, the Adversary Plaintiffs in the above-captioned Adversary Proceeding, bring this Adversary Proceeding against Arthur D. Gold, the debtor in the above-captioned Chapter 7 case and the Adversary Defendant in the above-captioned Adversary Proceeding.

## General Allegations

1.  The Adversary Plaintiffs are Richard P. Duffee and Rachel L. Duffee,brother and sister, who are residents of Massachusetts.

2.  Debtor, Arthur D. Gold, is a resident of Massachusetts and a debtor before this Honorable Court in  Chapter 7 Case  05-22609 –WCH.

3.  This is a complaint for misrepresentation, breach of fiduciary duty, failure to list debts in bankruptcy proceedings,  malpractice regarding fees, malpractice regarding specific professional experience, breach of contract and malpractice regarding professional ethics,  malpractice regarding loans to clients, contempt of  Supreme Judicial Court orders regarding notification responsibilities to clients after suspension, and ultimately, disbarrment.

4.  In 1986 Richard P. Duffee, on behalf of his family, retained Arthur D. Gold, then a partner at Lane, Altman & Owens LLP to resolve estate and title issues on a 28 acre parcel of land in Marshfield, Massachusetts which had been in the Duffee family for many years.  The ultimate objective of this project was to obtain a "land court title" for the property, and to determine its true owners.  This was completed in 1997. Gold commenced negotiations with attorneys for Richard and Rachel's second cousin, Deborah Cestaro of Concord, Massachusetts (who held an undivided one-third interest in the

property). He also served as the attorney for "The Estate of Leah W. Duffee, Richard P. Duffee, Trustee" after our mother's death in 2000.

5.   In May 2001 Lane Altman & Owens LLP closed its doors and Gold relocated to Eckert, Seamans, Cherin & Mellott, LLC. Immediately prior to Gold's move Richard P. Duffee closed down his broker-dealer-derivatives-trading activities as a member in good standing on the American Stock Exchange in New York City and moved back to Marshfield. Knowing little about "real" property and certain that real estate development was no place for amateurs, he retained Gold (in writing) to conclude negotiations with the cousin and to get busy with a contemplated development project for the aforementioned 28 acres.

6,   By the end of 2002, Richard and Rachel essentially had run out of cash to live. They complained to Gold about their dissatisfaction with his lack of progress in negotiating with their cousin, and with possible financing proposals for the real estate project. Gold replied by beginning to loan Richard small amounts of money, which by early 2003, "when no more was available" amounted to more than $13000. (Richard repaid Gold $18000 on January 13, 2004).

7.  Gold continued negotiations with the cousin throughout 2003, and

    eventually turned up a private party willing to lend $500,000 against a first

    mortgage on the 28 acre parcel, including the Duffee's residence.  To

    continue this negotiation, Gold required a "performance bonus" of 5 points,

    or $25000, even if we (he) were subsequently able to obtain better terms

    from another lender. Seeing no practical alternative, Richard agreed to pay

    Gold a  "performance bonus" of $22,000 fixed,  upon closing of  any like or

    better financing.  (Gold collected his $22000 "bonus" in January and

    February 2004, and Eckert Seamans et al. were paid $253000 against hourly

    billings through August 2004).


8.  In the first half of 2004 Gold pleaded with Richard Duffee to borrow funds

    from the project.  Richard unwisely advanced Gold sums totaling $16000

    before receiving yet another plea, this time for $17000.  Richard told Gold

    that there would be no more loans forthcoming, and not to broach the

    subject again.  Gold has never declared this advance/debt in his Chapter 7

    filings, and never properly informed Richard about his bankruptcy filings in

    2005 or subsequently.


9.  By the end of the summer, 2004 the project and the Duffees were out of

    money again.  Gold's budgeting projections proved unrealistic. To solve the

    problem, Richard and Rachel followed Gold's advice in getting another

    mortgage (for $300,000, largely  to pay project engineering and legal

bills).Gold had moved to Brecher, Wyner, Simons, Fox & Bolan, LLP on
September 1, 2004.

10. In February, 2005, needing even more money for the project, Gold found a
private party willing to lend $70,000 against a second mortgage on the
Duffee's house. The loan was closed on February 25, 2005. Gold and the
Duffees knew that this sum was not sufficient to carry the project for long.
Despite this unsatisfied need, Gold did, on March 15, 2005, without Richard
Duffee's knowledge, personally borrow $35000 from this same private lender.
Gold clearly violated any standard of professional ethics by this act. The
lender's committment to the Duffee's second mortgage was not limited to
$70,000, as they borrowed an additional $25000 in May, 2005. Richard
Duffee has noted, by reviewing Gold's recent case records, that Gold did a far
better job negotiating terms on his own loan than he did for his client.

11. Gold did, on October 28, 2005, close a $1,000,000 development liquidity loan
for the project with Investors' Realty Trust/Funding of Mashpee,
Massachusetts. Richard and Rachel personally guaranteed the full amount,
which has proved problematical for them, as the loan is in default and the
lender is suing the Duffees personally in state court, apparently because they
don't want to wait for the 220 Ferry Street LLC Chapter 11 DIP Case # 07-
14303-HJB to run its course in this court.

12. Gold claimed to be successful in finding and closing the IRT/F loan because he was a personal friend of IRT/F's manager, Thomas Belekewicz. Gold disclosed to the Duffees that Mr. Belekewicz also employed Arthur Gold's then senior partner and boss, Attorney Arthur Brecher, as house legal counsel. Only long after April 1, 2006, the day Attorney Brecher abruptly fired Gold, allegedly to cut costs, did Gold tell Richard Duffee that Arthur Brecher had a $400,000 participation in the Duffee $1,000,000 loan.   Duffee notes that he paid Brecher Wyner Simons Fox and Bolen LLP $208,000 for Gold's services between September 2004 and March 2006.  The Duffees, forced by a recent (November, 2007) state court suit brought against them by IRT/F, to deal for the present with IRT/F in state court AS WELL AS this Federal Court, have countersued IRT/F in an effort to get to the bottom of this. (Massachusetts Superior Court – Norfolk Civil Act. No. 07-1939)

13. Starting April 1, 2006 Arthur Gold practiced law solo.  From this time to the end of the year, (and the money), Arthur Gold exercised his power of attorney to pay himself checks in the amount of $140,000.  He never submitted a single bill, and insofar as Duffee can determine, did only a small amount of work (never completed) on subdivision final approval documents required by the Town of Marshfield.  When Duffee pressed him (the few times Richard could reach him) about town required documents, additional financing for road construction and other important matters, Gold assured Duffee at first that all was taken care of with IRT/F, that more money would be forthcoming from

them and from the Hingham Institution for Savings, with whom the project

had a road construction loan committment.dating from August 2005.

14.    In late November 2006 Gold told Duffee that Mr. Belekewicz had temporary

money problems and couldn't do anything for a while.  Mr. Belekewicz later

told a very different version of their meeting.  In January  2007 Gold became

increasingly evasive when Duffee asked him  about the status of the Hingham

Road Loan. Gold became impossible to reach.  (Duffee uses one cellphone

number exclusively, and has all his bills).

15.    By February Duffee was chasing Gold for answers by phone, letter, e-mail

and FAX.  By March Gold was supposed to be negotiating a refinancing loan

to solve all the project's and the Duffee's problems.  By April  IRT/F  sued for

foreclosure.  Gold was always one step away from solving the problems,

getting the money,  finishing the documents.

16.    In March 2007 Duffee informed Gold that he would wait no longer for the

documents, and pressed to engage a Marshfield attorney, Jon Davis, to

complete this part of the project.  Attorney Davis quickly completed the work

Gold asked for and returned it to Gold, who "needed to do a little more work"

and "check the details carefully" before submitting them to the town—to get

the final approvals necessary to record the new project—to get the desperately

needed refinancing package ---before the  imminent foreclosure on  June 13,

2007.

7

17.    On June 6, 2007 Gold advised Duffee to retain Attorney Rob Carpenter to go
to Plymouth County Court on June 13 to litigate certain defects in the
foreclosure documents.  Carpenter was successful, insofar as the court
postponed the foreclosure sale to July 11, 2007.

18.    On June 15 the Duffee's aforementioned cousin, Deborah Cestaro, now a
Second Mortgage Holder ($265,000) on the project, called Richard Duffee
with the news "I have heard a rumor that Attorney Arthur Gold has been
disbarred.  Have you knowledge of this?"  Duffee immediately called his New
York Attorney David Distler, who quickly responded with descriptions of
three Commonwealth of Massachusetts Board of Bar Overseers of the
Supreme Judicial Court Documents:

　　　　a.   February 13, 2007      Petition for Discipline, Arthur D. Gold,
　　　　　　Respondent

　　　　b.   March 8, 2007      Order of Immediate Temporary Suspension,
　　　　　　In Re:      Arthur Gold

　　　　c.   June 6, 2007      Judgement of Disbarrment,
　　　　　　In Re: Arthur Gold.

19.   The suspension and the disbarrment documents have very specific and
definite requirements regarding notifying clients of the attorney's status in
writing,, resigning powers of attorney, returning client files, notifying the
Supreme Judicial Court of compliance with their orders, and ceasing to
practice law.  Arthur Gold complied with none of these requirements in the
Duffee's case.  He continued to exercise his checkwriting powers.  He
engaged two attorneys on Duffee's behalf to complete work he would not be
able to do without being caught practicing law.  Gold continued to practice
law, and Gold made assiduous efforts to get paid another $100,000 at an
anticipated closing.

20.   Gold could never get the refinancing closed. Hence the real estate project
strangled from past overextention and current legal problems.  Finally the
Duffees saw the whole awful reality of the situation.  Richard, David Walsh,
and Mark Walsh reorganized the company and immediately put it into
Chapter 11. The Duffees will probably lose more than $3,000,000 as a result
of the above described horror.  The figure is Gold's, from the 2003-4 period.
Duffee only learned slowly, and only after the Chapter 11 filing, how much
Gold and the firms had overcharged for the work, Duffee also learned only
then how quickly and efficiently the work could have been done, had there
been a real estate development expert running the project instead of a real
estate malpracticioner.

9

**Prayer for Relief**

Wherefore, Plaintiffs pray for relief as follows:

1.      Relief from stay.  Allow movants to proceed with action(s) against
debtor and /or employers/partners of the debtor in the appropriate
courtd, as movants' issues pertain primarily to the debtor's conduct
and performance as their attorney, fiduciary, and real estate legal
expert.

2.      One other creditor in this case with breach of contract and
malpractice claims has already obtained such relief from stay.
Movants read in case history of yet another creditor with
professional claims against the debtor and his employers/partners
has recently applied for similar relief from this court.

3.      For damages which will adequately compensate the plaintiffs for
all their losses and damage;.

4.      For attorney's fees, costs and disbursements in bringing this action;

5.      For punitive damages;

6.    For such other and further relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED

Dated :    March 14, 2008

Richard P. Duffee

Rachel L. Duffee

Both residing at
220 Ferry Street
Marshfield, MA 02050-2418
Tel: (917)-929-1121
FAX:  (781)-834-7828
E-mail:  rpdonline@msn.com

MAR 14 '08 PM 3:52 USB

11

## CERTIFICATE OF SERVICE

Richard P. Duffee and Rachel L. Duffee (the undersigned) hereby certify that a copy of the foregoing Proof of Claim, Adversary Proceeding Cover Sheet, Adversary Complaint and Motion for Relief from Automatic Stay has been served via United States first class mail, postage prepaid, upon the following parties:

MICHAEL L. ALTMAN
ALTMAN RILEY ESHER LLP
100 FRANKLIN STREET
BOSTON, MA 02110

AMERICAN EXPRESS CENTURIAN BANK
C/O PHILLIPS AND COHEN ASSOCIATES LTD
258 CHAPMAN ROAD, SUITE 205
NEWARK, DE 19702



AMERICAN EXPRESS
CUSTOMER SERVICES
P. O. BOX 7825 C. S.
FT. LAUDERDALE, FL 33329

AMERICAN EXPRESS TRAVEL RELATED SERVICES INC.
C/O PHILLIPS AND COHEN ASSOCIATES LTD
258 CHAPMAN ROAD, SUITE 205
NEWARK, DE 19702

PAULA R. C. BACHTELL
US DEPT OF JUSTICE
OFFICE OF THE U. S. TRUSTEE
10 CAUSEWAY STREET  ROOM 1184
BOSTON, MA 02222

BANK OF AMERICA
P. O. BOX 15480
WILMINGTON DE 19850

BMW FINANCIAL SERVICES
P. O. BOX 9001065
LOUISVILLE, KY 40290


BOSTON
U. S. BANKRUPTCY COURT
10 CAUSEWAY STREET
ROOM 1101
BOSTON, MA 02222


BOULDER CAPITAL LLC
21 CENTRAL STREET
WESTON, MA 02493


BROOKS BROTHERS
P. O. BOX 530993
ATLANTA, GA
30353


CITIBANK
BOX 6500
SIOUX FALLS, SD 57117


CITIBANK/CHOICE
EXCEPTION PAYMENT PROCESSING
P. O. BOX 6305
THE LAKES, NV 88901-6305


COMM OF MASSACHUSETTS
DEPARTMENT OF REVENUE – BANKRUPTCY
P. O. BOX 9564
BOSTON, MA 02114

IAN CRAWFORD
TODD & WELD LLP
28 STATE STREET
BOSTON, MA 02109


GARY W. CRUICKSHANK
LAW OFFICE OF GARY W. CRUICKSHANK
21 CUSTOM HOUSE STREET SUITE 920
BOSTON, MA 02110


LEO R. D'ANTONA
C/O PAUL L. KENNY, ESQ.
42 HIGH STREET
MEDFORD, MA 02155


PHYLLIS D'ANTONA
C/O PAUL L. KENNY, ESQ.
42 HIGH STREET
MEDFORD, MA 02155


JOHN V. CARDONE, ESQ.
INTERNAL REVENUE SERVICE
10 CAUSEWAY STREET ROOM 401
BOSTON, MA 02222


NINA CHING, SPECIAL ASSISTANT
UNITED STATES ATTORNEY
10 CAUSEWAY STREET ROOM 401
BOSTON, MA 02222


CHRISTOPHER R. CONROY
PEABODY AND ARNOLD LLP
600 ATLANTIC AVENUE
BOSTON, MA 02210

THOMAS W. DUFFEY, ESQ.
KEANE AND KLEIN
COUNSEL TO KING'S FAIRE INC.
ONE CHURCH COURT
BOSTON, MA 02129


ARTHUR D. GOLD
#414
255 MASSACHUSETTS AVENUE
BOSTON, MA 02115


ARTHUR D. GOLD
#287
831 BEACON STREET
NEWTON CENTRE, MA 02459


JOSHUA GOLD
250 BEACON STREET
UNIT 3
BOSTON, MA 02116


JOHN FITZGERALD
OFFICE OF THE U. S. TRUSTEE
10 CAUSEWAY STREET
BOSTON, MA 02222


 ROBERT T. GILL
PEABODY AND ARNOLD
50 ROWES WHARF
BOSTON, MA 02110


ELIZABETH Q. HINES
P. O. BOX 432
MARSHFIELD HILLS, MA 02051


INTERNAL REVENUE SERVICE
SPS JFK BLDG.
PO BOX 9112  STOP 20800
BOSTON, MA 02203

PAUL L. KENNY
42 HIGH STREET
MEDFORD, MA 02155


KING'S FAIRE, INC.
C/O THOMAS DUFFEY
ONE CHURCH CT.
BOSTON, MA 02129


KING'S FAIRE, INC AND BONNIE J. SHAPIRO
140 GIDEONS POINT ROAD
TONKA BAY, MN 55331


MASSACHUSETTS DEPT OF REVENUE
BANKRUPTCY UNIT
P. O. BOX 9564
BOSTON, MA 02114


MBNA AMERICA BANK, NA
MAILSTOP DE5-014-02-03
PO BOX 15168
WILMINGTON, DE 19850


ROBERT A. MCCALL
PEABODY AND ARNOLD LLP
FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON, MA 02210-2261


NEIMAN MARCUS
P. O. BOX 720840
DALLAS, TX 75372

LYNNE F. RILEY
ALTMAN RILEY ESHER LLP
100 FRANKLIN STREET
BOSTON, MA 02110


LYNNE F. RILEY, ATTY.
ALTMAN, RILEY & ESHER
TRUSTEE IN BANKRUPTCY
100 FRANKLIN STREET
BOSTON, MA 02110


MARK C. ROSSI
JAGER SMITH PC
ONE FINANCIAL CENTER
BOSTON, MA 02111


SALLIE MAE
P. O. BOX 9500
WILKES BARRE, PA 18773


SALLIE MAE TRUST
C/O SALLIE MAE, INC.
220 LASLEY AVENUE
WILKES BARRE, PA 18706


BONNIE J. SHAPIRO
C/O THOMAS DUFFEY
ONE CHURCH CT.
BOSTON, MA 02129


UNITED STATES ATTORNEY
ONE COURTHOUSE WAY
SUITE 9200
BOSTON, MA 02210


UNITED STATES TRUSTEE
1184 T. P. O'NEILL FED.BLDG.
10 CAUSEWAY STREET
BOSTON, MA 02222

VERDOLINO AND LOWEY PC
124 WASHINGTON STREET
FOXBOROUGH, MA 02035


VOLVO FINANCIAL NORTH AMERICA
P. O. BOX 371395
PITTSBURGH, PA 15250


EDWARD L. WEINER
803 WISTERIA WAY
WAYLAND, MA 01778


Dated

March 14, 2008
--------

Richard P. Duffee

Rachel L. Duffee


Both residing at
220 Ferry Street
Marshfield, MA 02050-2418
Tel: (917)-929-1121
FAX: (781)-834-7828
Email: rpdonline@msn.com

MAR14'08 PM 3:52 USB

7